# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-01270-SCT

*THE CITY OF GULFPPPI, MISSISSIPPI, A
MUNICIPAL CORPORATION*

*v.*

*DEDEAUX UTILITY COMPANY, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/03/2016 |
| TRIAL JUDGE: | HON. WILLIAM R. BARNETT |
| TRIAL COURT ATTORNEYS: | JEFFREY S. BRUNI |
| | PETER C. ABIDE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANT: | JEFFREY S. BRUNI |
| | DUSTIN EUGENE USELTON |
| | MARGARET E. MURDOCK |
| ATTORNEYS FOR APPELLEE: | PETER C. ABIDE |
| | JOSEPH WALTER GILL |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | REVERSED AND REMANDED - 02/15/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This is the fourth appeal stemming from the City of Gulfport's taking of the Dedeaux

Utility Company via eminent domain.  The only issue on appeal is whether the interest rate

on the judgment is appropriate.  Because the trial court failed to follow our mandate to set

an interest rate, we reverse and remand for entry of judgment consistent with the evidence

presented.

**FACTS AND PROCEDURAL HISTORY**

¶2.     In 1996, Gulfport filed an eminent domain complaint against Dedeaux.  *City of Gulfport v. Dedeaux Util. Co., Inc.*, 187 So. 3d 139, 140 (Miss. 2016) ("*Dedeaux III*").  Gulfport did not take physical control of the utility until December 20, 2004, after a jury awarded Dedeaux $3,634,757.  *Id.*   Dedeaux appealed that verdict and Gulfport cross-appealed.  *Dedeaux Util. Co., Inc. v. City of Gulfport*, 938 So. 2d 838 (Miss. 2006) ("*Dedeaux I*").  In *Dedeaux I*, this Court reversed and remanded for a new trial, and the second jury awarded Dedeaux $5,131,676 for the taking.  *Dedeaux III*, 187 So. 3d at 140.  Dedeaux again appealed, and Gulfport again cross-appealed. *Dedeaux Util. Co., Inc. v. City of Gulfport*, 63 So. 3d 514 (Miss. 2011) ("*Dedeaux II*").  This Court again reversed and remanded in *Dedeaux II*, and the case was tried a third time, resulting in a jury verdict in favor of Dedeaux totaling $8,063,981.  *Dedeaux III*, 187 So. 3d at 140-41.  The jury found that the fair market value of Dedeaux as of December 3, 1996, when the complaint was filed, was $7,082,778.  *Id.* at 141.  It found that the fair market value of tangible assets added to Dedeaux from December 3, 1996, to December 20, 2004, when Gulfport took physical control, was $981,203.  *Id.*

¶3.     Based on payments already made by Gulfport to Dedeaux, the trial court found that Gulfport owed Dedeaux $1,951,102 plus interest on the amount of $7,082,778, and that it owed Dedeaux $728,117 plus interest on the amount of $981,203.  *Id.*  Gulfport appealed, and this Court affirmed the trial court on all issues except interest.  *Id.* at 141, 150-51.  The

2

trial court had determined that Mississippi Code Section 75-17-1 applied and mandated that it award eight-percent interest. *Id.* at 148-49. This Court determined that Mississippi Code Section 75-17-7 applied, which charged the trial court to set an interest rate. *Id.* The Court then remanded "for the limited purpose of determining a reasonable rate of interest and issuing an order for payment of that interest." *Id.* at 149.

¶4. In response to our 2016 remand, Dedeaux filed a motion to set an interest rate. However, in its motion, Dedeaux argued that the trial court should consider rates of return and attached a copy of the S&P Stock Index obtained from the internet to support its argument. At the hearing, Dedeaux argued for rates higher than market interest rates. Alternatively, if the court was going to consider only interest rates, Dedeaux argued the court should compound the interest, despite this Court's prior ruling that simple interest was the law of the case. *See Dedeaux I*, 938 So. 2d at 846 (Miss. 2006) (holding "legal interest" is not compounded, but is, rather, simple interest). Dedeaux offered only one exhibit in support of its argument. The exhibit was used to argue that if an eight-percent rate of interest was used, it would amount to a 4.894 percent rate of return over the entire time period.

¶5. Dedeaux's alternative argument remains that the rate of interest should in no event be less than eight percent, as this Court previously has upheld eight percent as being within a judge's discretion, citing noneminent-domain cases and, most critically, time periods outside

the suppression of market interest rates by the Federal Reserve.[1] Dedeaux further argued that "an interest rate of higher than eight percent would be fair and reasonable as a prudent investor would have been able to receive a *higher rate of return*."

¶6. Dedeaux offered no legal authority to the trial court or to this Court to support its argument that courts should enter the speculative investment domain of rates of return on stocks and real estate to supplant the required statutory language of interest rates. *See* Miss. Code Ann. § 75-17-7 (Rev. 2016) ("All other judgments or decrees shall bear *interest* at a per annum *rate* set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.") (emphasis added). Both are subject to vastly fluctuating return and often are determined on unrelated market events and timing.

¶7. The City agrees that the trial court was charged with determining a *rate of interest*. To satisfy our mandate, the City offered the only witness at the hearing, Gary Wayne Kelly, Ph.D. Kelly currently serves as Chairman of the Department of Finance, Real Estate, and Business Law at the University of Southern Mississippi, where he teaches undergraduate, graduate, and doctoral-level classes. He has been involved in the study, teaching, and

---

[1] On November 26, 2008, the Federal Reserve launched QE1 (the initial round of quantitative easing), an unconventional method to promote economic growth by purchasing government and/or other securities from the market to lower interest rates and increase the money supply. Quantitative easing artificially suppresses market interest rates. In November 2010, the Federal Reserve announced a second round of QE. A third round was announced in September 2012. A fourth round began in January 2013. The policy ended in 2014.

understanding of interest rates for thirty-six years. He received his Master of Economics from Tulane and his Doctorate of Finance and Business Administration in Finance from the University of Alabama. He previously was employed as a professor of finance and economics at Mississippi State University for twenty-four years. He serves as the chairman of a Mississippi federal credit union.

¶8.     Upon accepting Kelly as an expert witness in finance and economics, the court stated that Kelly would be "allowed to testify as an expert concerning what an interest rate is and what market interest rates are. He will not be allowed to testify as to what the interest rate should be in this case since that is a legal decision to be made by me."

¶9.     Kelly testified "as a concept, interest is always the rental price of borrowed funds." Kelly testified that an interest rate[2] was "a fee for the rental of funds." Conversely, Kelly defined "rate of return" as "all of the economic changes that happen to a position of an investor, either whether a lender or owner from one point in time to another point in time." In explaining the difference between interest rates and rates of return, Kelly testified that the two could not be "used interchangeably." Kelly not only testified that it would not be proper to use a "so-called average of the S&P 500 for the past twenty years" as a rate of interest, he explained the error of conflating the two.

---

[2] "Interest rate" also is defined as "[t]he percentage of an amount of money which is paid for its use for a specified time." *Interest rate,* Black's Law Dictionary (5th ed. 1979). Quite often, interest rates, such as Prime, set by the Federal Reserve, and LIBOR, the London Interbank Offered Rate, are used as benchmarks by national and local lending institutions, such as banks and savings and loans.

¶10.    Kelly testified that he "performed an analysis as to the interest rate that has historically been applied with respect to the City of Gulfport in the financial markets from 1996 . . . to the current year." He found that, over a twenty-year period, the City of Gulfport had a "number of bond issues and a number of long-term credit transactions of several types." Kelly testified and offered as part of an exhibit the average long-term financing rates for Gulfport during that time, which was "right about four percent – 3.9 to 4.04." He acknowledged some of those transactions had favorable tax advantages for the investors.

¶11.    Kelly also provided market rates available to the general public by lending institutions and the U.S. Government in a summary of "Selecte[d] Interest Rates 1996-2016." He identified the *interest rates* for one-year certificates of deposit, five-year certificates of deposit, and ten-year treasury notes over the same interval. For rates of interest on certificates of deposit, Kelly used "the average hundred highest offer rates for CDs of 1 and 5 year maturities. Those are daily offers. So I managed to get every working day's offer rate for CDs. . . ." As to the ten-year treasury notes, Kelly testified that they were issued by the U.S. Treasury with a ten-year maturity.

¶12.    In its argument to the trial court, the City politely reminded the trial judge of his duty:

> Bottom line is the Supreme Court has asked Your Honor to determine the rate of interest and confined it to just that. In terms of that we can understand the Court has got to exercise discretion. And we know that discretion can't be just unfettered and it has to be relying on something.

¶13.    The trial court commented that he did not believe it was necessary for an expert to tell him what the interest rates were in Mississippi because the trial court knew that interest rates

6

ranged from zero to thirty-six percent. He permitted Kelly to testify only because "[a]nyone can testify to any interest rate anybody gets anywhere. . . ."

¶14.    The trial court acknowledged that this Court directed him to determine the "applicable interest rate only." He also acknowledged that Dedeaux already had been compensated for the net cash value of its business for a period of twenty years. "So, in effect, they received compensation for the loss of income for that period of time."

¶15.    Subsequently, the court, *sua sponte*, marked three documents from the Public Employees' Retirement System of Mississippi ("PERS") – a brochure, the mission statement, and a graph – for the record.[3] Based on the rates of return found in those documents, the trial court opined as follows:

> What I did -- the first taking was 1996, so I added up the *annual rates of return* from 1997 to 2014 when the judgment was entered and came up with 147 total. I divided that by 18, which gives an average *annual rate of return* for those years of 8.17.
>
> On the taking which was in December of 2004, basically the same thing. I started with 2005 through 2014 and came up with 83.90 *rate of return*. I divided the total *rate of return* for those years, divided by 10 years of 8.39 percent.
>
> So the Court will find that the *Dedeauxs* [sic] *are entitled* to the same *rate of return* as the 147,000 some odd people in the State of Mississippi that participate in this *investment*. . . .

_____

[3] PERS is defined as a benefit retirement program for employees of the State of Mississippi, and Dedeaux, as a private entity, was not eligible to participate.

7

(Emphasis added.) The trial court's exhibit clearly reads that the document pertained to "rates of return[;]" an "average rate of return at 9.16 percent . . . , that was lowered to 7.75 percent." The trial court noted that the principal judgment had been paid on May 10, 2016. Therefore, he found interest should stop accruing on that date. The trial court ordered the judgment to be paid within thirty days, and if it was not, the interest would begin accruing again at the aforementioned rate of return of 7.75 percent.

## ANALYSIS

¶16.    The trial court was authorized to grant interest in the instant case by statute. Miss. Code Ann. § 11-27-19 (Rev. 2004). Accordingly, the determination of what legal interest means is a exercise in statutory interpretation and is subject to de novo review. *5K Farms, Inc. v. Miss. Dep't of Revenue*, 94 So. 3d 221, 225 (¶ 14) (Miss. 2012); *Page v. Univ. of S. Miss.*, 878 So. 2d 1003, 1004 (¶ 4) (Miss. 2004). Accordingly, whether or not the trial judge erred in considering the definition of interest rate to encompass evidence of rates of return is subject to *de novo* review.

¶17.    Comments by the trial judge during the hearing confirm he erred by considering evidence not offered by either party after he procured evidence, before finding that the rate of return for the state-controlled pension fund (not available to the public) would be the rate of interest for these judgments, as opposed to market rates of interest.

¶18.    Rates of interest and rates of return are not synonymous terms. *See* Miss. Code Ann. § 75-17-7 (Rev. 2016) (making no reference to a rate of return). The trial court was mandated

8

with the task "of determining the applicable *interest rate* and entering an order requiring payment of that interest." ***Dedeaux III***, 187 So. 3d at 151 (emphasis added).

¶19.    While we typically afford great deference to findings of fact, we refrain in this case for multiple reasons  – not only did the trial court reject the only admissible evidence presented on interest rates, he also applied an erroneous legal standard in his application of Section 75-17-7 and failed to follow our mandate to set an interest rate.[4]

¶20.    It was error for the trial court to consider the PERS rate of return. After receiving argument from Dedeaux and the City, exhibits from each bearing on interest rates, and Kelly's testimony, the trial court then discussed the PERS rate-of-return documents he procured and considered *sua sponte*. Neither party offered those documents. The court then used the PERS rate-of-return documents to set an interest rate. These rate-of-return documents were not relevant to this Court's mandate to set an interest rate. The only evidence on interest rates properly admitted in the record was Dr. Kelly's testimony and the exhibits offered by Dedeaux and the City. There is no support in the record for the trial court's judgment.

---

[4] In its Summary of the Argument, the City expressed that the trial court had erred in exercising its discretion but also pointed out the that trial court's ruling was contrary to the applicable statute. The trial court identified the establishment of the interest rate as a legal issue. *See supra* ¶ 8.

¶21.    In the record before this Court, the highest interest rates[5] properly offered and received into evidence were as follows:

December 3, 1996, through July 25, 2004 – 6.438 percent;

December 6, 2004, through March 23, 2008 – 4.274 percent; and

June 2, 2008, until May 10, 2016 – 4.148 percent.[6]

The trial court rejected the only rates of interest properly introduced.

¶22.    Cautious investors and courts alike traditionally have followed the bromide that one should be more concerned with the return *of* capital than with the return *on* capital. Courts regularly have followed this principle when money is placed in the court's registry. To insure the principal is available for distribution at the appropriate time, courts deposit the funds in local lending and savings institutions, who insure the deposits.[7] Our law instructs courts to consider market interest rates when setting the rate of interest on judgments. "Under the statute, a two- or three-percent interest rate might sometimes be fair and reasonable, while, at other times, market conditions and other relevant factors might require the trial judge to

---

[5] While the interest rates for the one-and five-year certificates of deposit may have been minimally higher for a short period of time, the ten-year U.S. treasury rates provided the overall highest interest rates for the entire time period.

[6] Trial Exhibit Three provided interest rates for December 1996 and December 2004. The June 2008 rate is an average of December 2007 and December 2008 treasury rates.

[7] For example, minor settlements. *See* Miss. Code Ann. § 93-13-17 (Rev. 2013).

10

set a higher rate."[8] ***Bluewater Logistics, LLC v. Williford***, 55 So. 3d 148, 164 (Miss. 2011). *See also **Watson v. Watson***, 882 So. 2d 95, 111 (Miss. 2004) (On remand, the Court instructed the chancellor to reexamine its award of eight-percent interest rate "in light of today's prevailing interest rates."); ***Brawdy v. Howell***, 841 So. 2d 1175, 1180 (Miss. Ct. App. 2003) (Court of Appeals held it was not an abuse of discretion or manifest error for the chancellor to set interest at a rate of three percent.).[9]

¶23.    The trial court's judgment was contrary to the only evidence presented on interest rates. Given that this is the fourth appeal of this case which spans three decades, it is time to end this litigation. The judgment of the trial court is reversed, and this case is remanded for entry of judgment consistent with this opinion and the facts presented at the hearing.

¶24.    **REVERSED AND REMANDED.**

**WALLER, C.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.  KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, JUSTICE, DISSENTING:**

---

[8] For example, the present interest rates are 1.85 percent for a one-year certificate of deposit, 2.33 percent for a five-year certificate of deposit, and 2.86 percent for a ten-year treasury note. *See* https://www.bankrate.com/cd.aspx and https://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yield. (Last visited on February 13, 2018).

[9] Section 1961 of Title 28 of the United States Code was amended in 1982 to remove language allowing the interest rate on federal judgments to be set by "State law" and instead set the  interest rates on a formula based on market interest rates. *See* 28 U.S.C.A. 1961.

11

¶25. I do not believe the trial court erred in setting the interest rate in this case, particularly given the wide discretion and latitude given trial courts in determining interest. Certainly, rates of return are one of many factors a trial court may consider. Consequently, I dissent.

## 1. Standard of Review

¶26. This Court reviews an award of interest for abuse of discretion. *Union Carbide Corp. v. Nix, Jr.*, 142 So. 3d 374, 385 (Miss. 2014). The majority reviews this issue de novo because it claims that what evidence a trial court may consider in determining an interest rate is a legal issue going to the definition of legal interest. This argument misstates the issue at hand. The trial court did not seek to *define* "legal interest" as encompassing rates of return, nor did it engage in statutory interpretation. Rates of return were simply one of the pieces of evidence that the trial court considered in making its determination of setting the interest rate. Again, the trial court did not define "interest rate" under the statute; it considered various evidence in setting the interest rate in this case at a certain number. Thus, this is simply not a question of law. This suggestion completely strips a trial court of any discretion. It suggests that this Court must ascertain a finite list of factors or evidence that a trial court may consider in determining an interest rate. We have never so held, nor do the statutes regarding interest rate prescribe or proscribe any certain categories of evidence to be considered. The evidence a trial court may consider in determining an interest rate is within the trial court's discretion, and only an abuse of that discretion warrants reversal.

## 2. Interest Rate versus Rate of Return

12

¶27. In eminent domain proceedings, "[a]ny judgment finally entered in payment for property to be taken shall provide legal interest on the award . . . from the date of the filing of the complaint until payment is actually made; provided, however, that interest need not be paid on any funds deposited by the plaintiff and withdrawn by the defendants prior to judgment." Miss. Code Ann. § 11-27-19 (Rev. 2004). The "legal interest" is an "interest at a per annum rate set by the judge hearing the complaint . . . ." Miss. Code Ann. § 75-17-7 (Rev. 2016); *City of Gulfport v. Dedeaux Util. Co., Inc.*, 187 So. 3d 139, 149 (Miss. 2016) (*Dedeaux III*). Gulfport argues that the trial court improperly set a "rate of return" instead of an "interest rate," which it asserts violates the statute, violates this Court's limited mandate, and unfairly compensates Dedeaux for future income for which it was already compensated in the jury verdict. The trial court clearly noted that it was allowed to *consider* rates of return in deciding what interest rate to order. It did not conflate the two with its ruling, but considered rates of return in determining a fair and reasonable interest rate. Moreover, the court indicated that it considered the fact that the jury verdict compensated Dedeaux for lost future income. This issue is without merit.

¶28. Gulfport also argues that the only evidence properly before the trial court was the testimony of its expert, thus the trial court could not vary from the evidence before it. For the reasons discussed below, Gulfport's expert was not the only evidence properly before the

13

trial court.[10] Furthermore, Dedeaux argued that an eight-percent rate or more was reasonable because it could have invested the money, and because eight percent had been used in the first two trials without objection from Gulfport. The trial court also indicated that it was considering rates of return in its determination of a fair and reasonable rate, not just the interest rate espoused by Kelly. Kelly also testified in response to a question from the court that a prudent investor would have a diversified portfolio, although he was basing his analysis of interest rates on very conservative investments such as bonds.

¶29. This Court has noted that when trial judges "without proof, protest or argument of counsel, or agreement of the parties" continue to award interest at the eight-percent rate previously mandated by statute, this Court is not inclined to address the issue when no objection occurs. *Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 164 (Miss. 2011). While this case is not a case in which no proof was offered, if eight percent interest rates based on no proof are not inherently objectionable, the trial court's determination, which simply varied from Gulfport's evidence, was not problematic. The trial court clearly considered multiple factors in coming to its decision.

---

[10]The majority strips the trial court of its discretion in determining an appropriate interest rate by requiring that the trial judge accept a legal conclusion (the appropriate interest rate) made by a financial expert or a document. But the trial court in its wide discretion may consider any number of *factors* in determining an interest rate, and it is not required to and should not be required to award an interest rate *only* if an expert opined it was appropriate or a document stated the final interest rate. The majority allows the trial court to set an interest rate only at an interest rate placed in evidence, rather than considering the interest rates placed in evidence along with a multitude of other factors that may influence the particular case at hand.

14

### 3. PERS Documentation

¶30.    Gulfport argues that the court's reliance on PERS documentation violated due process, and that the PERS documentation was inadmissible.  Dedeaux argues that Gulfport waived any objection to this evidence, that the evidence was admissible, and that the reliance on the PERS documentation did not violate due process.  Gulfport counters that it should not be expected to interrupt a judge during his ruling in order to preserve its objection.

¶31.    While Gulfport should not be required to *interrupt* a judge to preserve its objection, the record reveals that Gulfport had ample opportunity after the judge finished ruling to lodge its contemporaneous objection to the PERS documentation.  Gulfport did not object, nor did it file a motion for reconsideration, and Gulfport therefore waived this argument.  *See City of Jackson v. Jordan*, 202 So. 3d 199, 206 (Miss. 2016) ("If a proper contemporaneous objection is not made, an error is waived.").  The majority should not now address it.

¶32.    The trial court did not abuse its discretion in awarding the interest rate.  Further, Gulfport waived any objection to the use of PERS documentation to assist the court in determining an interest rate.  I would affirm the trial court's judgment.

**KITCHENS, P.J., JOINS THIS OPINION.**

15